**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Neil Hastings and Jennifer Karpiuk,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

               Civ. No. 05-2566 (RHK/AJB)
               **MEMORANDUM OPINION**
               **AND ORDER**

v.

Gary L. Wilson, *et al.*,

        Defendants.

---

Gerald D. Wells, III, Edward W. Ciolko, Joseph H. Meltzer, Schiffrin, Barroway, Topaz & Kessler, LLP, Radnor, Pennsylvania, Robert I. Harwood, Samuel K. Rosen, Wechsler Harwood, LLP, New York, New York, Thomas V. Seifert, Vernon J. Vander Weide, Head Seifert & Vander Weide, Minneapolis, Minnesota, for Plaintiffs.

Thomas W. Tinkham, Stephen P. Lucke, Andrew J. Holly, Dorsey & Whitney, LLP, Minneapolis, Minnesota, Christopher J. Rillo, Thomas S. Gigot, Groom Law Group, Washington, DC, for Defendants Gary L. Wilson, Douglas Steenland, Richard Anderson, Terri L. Keimig, Timothy J. Meginnes, Michael Becker, Robert Brodin, Hiram Cox, John H. Dasburg, and Mickey P. Foret, Bernard L. Han, Daniel Matthews, James G. Matthews, Thomas Momchilov.

Howard Shapiro, Robert W. Rachal, Stacey CS Cerrone, Proskauer Rose, LLP, New Orleans, Louisiana, Barbara Jean D'Aquila, Cynthia A. Bremer, Flynn Gaskins & Bennett, LLP, Minneapolis, Minnesota, Stephen P. Lucke, Dorsey & Whitney, LLP, Minneapolis, Minnesota, for Defendants Tom Goebel, Bill Johnston, Jim MacKenzie, Steve Miller, Len Willey, Steve Wilson, and Rick Woolley.

---

**INTRODUCTION**

Plaintiffs Neil Hastings and Jennifer Karpiuk ("Plaintiffs"), two former employees of Northwest Airlines, Inc. ("NWA"), allege that certain executives at NWA (the "NWA Defendants")[1] and members of NWA's Pilots' Retirement Board (the "Pilot Defendants")[2] breached fiduciary duties owed to them and other similarly situated individuals, causing their retirement savings plans to lose value. The Pilot Defendants and the NWA Defendants each move to dismiss, arguing, respectively, that Plaintiffs lack standing and that their claims are preempted by the Railway Labor Act ("RLA"). For the reasons set forth below, the Court will grant both Motions.

## BACKGROUND

**I.   Plaintiffs' Retirement Funds**

Hastings and Karpiuk were members of the International Association of Machinists and Aerospace Workers ("IAM") and were employed by NWA for at least some of the period between October 2000 to September 14, 2005, when NWA sought bankruptcy protection. (Meginnes Aff. ¶ 3, Ex. A; see also Am. Compl. ¶¶ 15-16.)

In 1993, NWA provided shares of NWA Series C Voting Convertible Exchangeable Preferred Stock ("Preferred Stock") to employees who were members of the IAM, as well

---

[1] The NWA Defendants are Gary L. Wilson, John H. Dasburg, Douglas Steenland, Richard H. Anderson, Terri L. Keimig, Timothy J. Meginnes, Michael Becker, Robert Brodin, Mickey P. Foret, Hiram Cox, Thomas Momchilov, Daniel Matthews, James G. Matthews, and Bernard L. Han. (NWA Mem. in Supp. 2 n.1.)

[2] The Pilot Defendants are Steve Wilson, Steve Miller, Tom Goebel, Bill Johnston, Len Willey, Rick Woolley, and Jim MacKenzie. (NWA Mem. in Supp. 2 n.1.)

as to three other employee groups,[3] in consideration for wage concessions. (Am. Compl. ¶¶ 62-63; Meginnes Aff. Ex. B (the "IAM Equity Agreement") ¶ 2.1; Brennaman Decl. ¶ 5.) NWA placed the Preferred Stock into a newly created profit-sharing ERISA plan – the Northwest Airlines Corporation Employee Stock Plan (the "Employee Plan"). (Am. Compl. ¶¶ 58, 62, 63; IAM Equity Agreement ¶ 2.1; see Meginnes Aff. Ex. F.) The Employee Plan was divided into separate trust accounts for each of the four employee groups, and each participant in the Employee Plan had an individual interest in the assets of his or her employee group's trust account. (IAM Equity Agreement ¶ 2.3; Employee Plan ¶ 4.2.2; Am. Compl. ¶ 63.) Each employee group, upon approval by NWA, selected a trustee to administer its trust account.[4]

In accordance with the foregoing, NWA and the IAM entered into a stock plan trust agreement for NWA's IAM-represented employees (the "IAM Trust Agreement"). (See Meginnes Aff. Ex. I.) The IAM Trust Agreement set forth the rules governing the trust's assets, including the powers and duties assigned to the IAM Trustee. (Id. at ¶¶ 2.2, 2.3.)

In late 2002, the Employee Plan was terminated and the NWA stock held in it was transferred to three separate NWA-sponsored 401(k) plans (the "Retirement Savings Plans"

---

[3] The three other employee groups were the International Brotherhood of Teamsters ("Teamsters"), the Air Line Pilots' Association International ("ALPA"), and Management employees. (Meginnes Aff. Ex. F at 3-4.)

[4] These trustees are referred to herein by the employee group name, *e.g.*, the IAM Trustee. The Management Trustee was appointed by NWA. (IAM Equity Agreement ¶ 2.3.)

or "RSPs"). (Am. Compl. ¶ 58.) To that end, NWA and the IAM executed a letter agreement (the "IAM Merger Agreement"), pursuant to which stock held in the Employee Plan for each of the IAM and Teamsters-represented employee groups was transferred to the Retirement Savings Plan for Contract Employees (the "Contract Plan"). (Am. Compl. ¶ 58; Meginnes Aff. Ex. J (the "IAM Merger Agreement"); Meginnes Aff. Ex. E. ¶¶ 4.1.5, 12.3.4; NWA Mem. in Supp. at 4 n.4.) Stock held in the Employee Plan for the ALPA-represented employees was transferred to a similar plan – the Retirement Savings Plan for Pilot Employees (the "Pilots' Plan"). (See Meginnes Affidavit Ex. H ¶ 4.1.6.)

Although IAM's stock was transferred from the Employee Plan to the Contract Plan, the IAM Trustee retained his authority over the NWA securities that he had held in the Employee Plan. (Meginnes Ex. J ¶¶ 2(b)-(d).) The ALPA Trustee, however, was not retained; instead, NWA and ALPA created a Retirement Board – made up of the Pilot Defendants – to manage the assets of the Pilots' Plan. (Am. Compl. ¶ 43.)

## II.     The NWA Bankruptcy and RSPs' Lost Value

In 2000, NWA began to suffer financial losses. (Am. Compl. ¶ 113.) From January 1, 2001, to June 30, 2005, NWA suffered losses of $3.6 billion and its debt load increased from $4 billion to $9 billion. (Id.) During this same period, several Defendants sold their personal shares of NWA stock. (Am. Compl. ¶ 242.) Each of the RSPs, however, retained its shares of NWA stock. (Am. Compl. ¶ 245.)

On September 14, 2005, NWA filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. (Am. Compl. ¶ 168; NWA Mem.

in Supp. at 10.) On that day, NWA common stock closed at $0.86 per share – down from a closing value of approximately $25.00 per share on October 1, 2000. (Am. Compl. ¶ 167.)

In October 2005, Karpiuk and Hastings commenced this action against the NWA Defendants and the Pilot Defendants, alleging that (1) each failed to "prudently and loyally manage the [RSPs'] assets," (2) the NWA Defendants failed to adequately monitor the Pilot Defendants and the trustees of the several RSPs by not ensuring that they had accurate information regarding NWA's deteriorating business prospects, and (3) certain NWA Defendants and Pilot Defendants breached their duty to avoid conflicts of interest because they failed to ensure that each RSP divested its holdings of NWA stock when it appeared imprudent to continue holding it, in order to ensure that their personal NWA stock maintained a higher value. (See Am. Compl. ¶¶ 212-16, 227-44.)

The Pilot Defendants and the NWA Defendants each move to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and argue that Plaintiffs' claims are preempted by the RLA or, in the alternative, that they did not owe a fiduciary duty to Plaintiffs. In addition, the Pilot Defendants argue that Plaintiffs lack standing to sue them for actions taken in administering the Pilots' Plan.[5]

## STANDARD OF DECISION

---

[5] Because the Court determines that Plaintiffs lack standing to sue the Pilot Defendants for actions taken while administering the Pilot's Plan and that the RLA preempts the instant claim against the NWA Defendants, it need not address whether the Defendants owed Plaintiffs fiduciary duties.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court looks to the factual allegations in the Complaint. Morgan Distrib. Co., Inc. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989). All factual allegations must be accepted as true and every reasonable inference must be made in favor of the plaintiff. Fed. R. Civ. P. 12(b)(6); Midwestern Mach., Inc. v. Nw. Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999). However, the Court need not consider conclusory allegations or blindly accept the legal conclusions drawn by the plaintiff. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); Kaylor v. Fields, 661 F.2d 1177, 1182 (8th Cir. 1981). A complaint should be dismissed under Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), a defendant may challenge the plaintiff's complaint either on its face or on the truthfulness of its proffered facts. See, e.g., Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). In a facial challenge to jurisdiction, the Court must restrict its review to the pleadings and afford the non-moving party the same protections it would receive when considering a Rule 12(b)(6) motion to dismiss. See Osborn, 918 F.2d at 729 n.6. In other words, the Court must presume that all of the factual allegations in the complaint are true, and it will not dismiss the claims unless the plaintiff fails to allege an essential element for subject-matter jurisdiction. See Titus, 4

F.3d at 593 (citing Eaton v. Dorchester Dev., Inc., 692 F.2d 727, 731-32 (11th Cir. 1982)); Osborn, 918 F.2d at 729 n.6.

## ANALYSIS

The NWA Defendants and the Pilot Defendants have separately briefed their arguments in these Motions. Because the Pilot Defendants challenge whether Plaintiffs have standing to bring the instant claims against them, the Court will analyze this issue first. See McClain v. Am. Econ. Ins. Co., 424 F.3d 728, 731 (8th Cir. 2005) (standing "is the threshold question in every federal case, determining the power of the court to entertain the suit") (citations omitted).

### I.  Pilot Defendants' Motion to Dismiss for Lack of Standing

The Pilot Defendants argue that Plaintiffs lack standing to assert that they breached a fiduciary duty to the Pilots' Plan because Plaintiffs did not participate in the Pilots' Plan.[6] (Pilots' Mem. in Supp. at 17-18.) Only a participant in, a fiduciary for, or a beneficiary of, an ERISA plan has standing to sue under ERISA, and this Court has jurisdiction only over lawsuits brought by a member of one of these groups. 29 U.S.C. § 1132(a)(3), (e)(1).

Plaintiffs allege that they are participants in the Contract Plan. (Am. Compl. ¶ 5.) They do not contend, however, that they are participants in, beneficiaries of, or fiduciaries

---

[6] The Pilot Defendants argue that Plaintiffs lack both constitutional standing and statutory standing under ERISA. Because the Court determines that Plaintiffs lack statutory standing, it will not address the Pilot Defendants' constitutional argument. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 117 (1998) ("[G]iven a choice between two jurisdictional questions – one statutory and the other constitutional – the Court has the power to answer the statutory question first.").

7

for, the Pilots' Plan. Accordingly, Plaintiffs' own allegations fail to support the conclusion that they have standing to sue the Pilot Defendants for their actions in administering the Pilots' Plan.

In an attempt to establish standing, Plaintiffs invoke Federal Rule of Civil Procedure 23.[7] Plaintiffs assert that they are class representatives for those individuals injured by each plan's "imprudent holding of [NWA] stock" and, as such, have standing to bring this action against each of the RSPs' administrators, including the Pilot Defendants. (Mem. in Opp'n to Pilots' Motion at 23.) To support this argument, Plaintiffs rely upon Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410 (6th Cir. 1998), and Forbush v. J.C. Penney Co., 994 F.2d 1101 (5th Cir. 1993), for the proposition that "an individual in one ERISA benefit plan can represent a class of participants in numerous other plans other than his own, if the gravamen of the plaintiff's challenge is to the general practices which affect all of the plans." Fallick, 162 F.3d at 422.

Plaintiffs' argument is unpersuasive. The Eighth Circuit has held that a class representative must have individual standing against a defendant before he may represent a class against that defendant. See Hall v. Lhaco, Inc., 140 F.3d 1190, 1196 (8th Cir. 1998) (when a plaintiff "does not have standing to pursue his claim . . . it is immaterial whether any member of the potential class would have standing to pursue [the] claim. [The plaintiff] is not a proper representative of the class where he himself lacks standing to pursue the

---

[7] Rule 23, in general, allows an individual to represent a class of persons, provided that the person meets the class action criteria. See Fed. R. Civ. P. 23(a).

claim."). Accordingly, Plaintiffs may not use Rule 23 to circumvent their obligation to establish standing under ERISA.

Furthermore, Fallick and Forbush do not support the proposition that an individual may represent a class of persons against a defendant whom that person lacks individual standing to sue. Unlike in the instant case, in Fallick and Forbush a single entity administered multiple ERISA plans, *including* the class representative's plan. See Fallick, 162 F.3d at 411; Forbush, 994 F.2d at 1103. The class representative was allowed to represent participants in other ERISA plans that were administered by the same defendant because the representative himself had standing to sue. Fallick, 162 F.3d at 423; Forbush, 994 F.2d at 1106. Neither case, therefore, eliminated the well-settled principle that the named plaintiff must have individual standing against the defendant. See, e.g., Fallick, 162 F.3d at 423 ("[a] potential class representative must demonstrate individual standing [vis-a-vis] the defendant; he cannot acquire such standing merely by virtue of bringing a class action") (citations omitted).

Accordingly, Plaintiffs may not represent participants in the Pilots' Plan without demonstrating that they have individual standing to do so. And, because Plaintiffs have not alleged that they participated in the Pilots' Plan, they do not have standing to sue the Pilot Defendants for actions related to the administration of that Plan, and their claims against the Pilot Defendants will be dismissed.

**II.     NWA Defendants' Motion to Dismiss on RLA Preemption**

The NWA Defendants argue that Plaintiffs' claims should be dismissed because they are preempted by the RLA. (NWA Mem. in Supp. 19-21). The RLA requires parties to arbitrate all "minor disputes" to an adjustment board – "minor disputes" are controversies "involving the interpretation or application of [an] existing [collective bargaining agreement]." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 256 (1994); accord 45 U.S.C. § 184. The adjustment board has "mandatory, exclusive, and comprehensive" jurisdiction over minor disputes, and the remedies it provides are the "complete and final means for settling the minor disputes." Bhd. of Locomotive Eng'rs v. Louisville & Nashville R.R. Co., 373 U.S. 33, 38-39 (1963).

The NWA Defendants argue that Plaintiffs' claims are preempted by the RLA because the Employee Plan, the Contract Plan, the IAM Trust Agreement, the IAM Equity Agreement, and the IAM Merger Agreement (collectively referred to as the Plans and Agreements)[8] must each be interpreted to determine whether the NWA Defendants owed (and breached) a fiduciary duty to the Contract Plan. (NWA Mem. in Supp. at 19- 21; NWA Reply Mem. at 2-5.) In response, Plaintiffs argue that their claims are not preempted because the NWA Defendants breached fiduciary duties imposed on them by ERISA, and these claims do not require interpretation of the Plans and Agreements. (Mem. in Opp'n to Pilots' Motion at 28-36.) Specifically, plaintiffs argue that the NWA Defendants owed

---

[8] Plaintiffs do not dispute that the Plans and Agreements constitute a collective bargaining agreement between the IAM and NWA. (See Mem. in Opp'n to Pilots' Motion at 31; Mem in Opp'n to NWA Motion at 15.)

ERISA fiduciary duties to the Contract Plan for two reasons: (1) the NWA Defendants enjoyed discretionary authority over the Contract Plan, and (2) the NWA Defendants exercised discretionary control over the Contract Plan.[9]  Plaintiffs' arguments are not persuasive.

In their attempt to establish that the NWA Defendants enjoyed discretionary authority over the Contract Plan, Plaintiffs rely on several provisions *within the Plans and Agreements.*  First, Plaintiffs cite the IAM Trust Agreement to show that the NWA Defendants were not explicitly granted the power to sell the assets in either the Employee Plan or the Contract Plan.  (Mem. in Opp'n to NWA Motion at 9.)  They next cite the IAM Equity Agreement for the proposition that the IAM Trustee must be approved by NWA, and they argue that this "power to appoint" the IAM Trustee vested the NWA Defendants with a fiduciary duty to the Contract Plan.  (Id. at 10.)  Plaintiffs' argument, therefore, fails *ipso facto* because they rely on the Plans and Agreements in an attempt to establish that the NWA Defendants enjoyed discretionary authority over the Contract Plan.  Plaintiffs' claims clearly require an interpretation of the Plans and Agreements and, hence, are preempted.

Plaintiffs' next argument, that the NWA Defendants exercised discretionary authority over the assets of the Contract Plan also fails.  (Mem. in Opp'n to NWA Motion

---

[9] An individual is a fiduciary of an ERISA plan if he has discretionary authority, or has exercised discretionary control, over the plan or its assets.  Olson v. E.F. Hutton & Co., Inc., 957 F.2d 622, 625 (8th Cir. 1992); 29 U.S.C. § 1002(21)(A).

at 13-14). Plaintiffs' Amended Complaint is utterly devoid of any facts that support this allegation, stating only that "[the NWA Defendants] performed fiduciary functions [toward the Contract Plan] and thereby also acted as fiduciaries under ERISA." (See Am. Compl. ¶ 101.) Such a conclusory allegation – that the NWA Defendants "performed fiduciary functions" – is insufficient to survive a motion to dismiss. Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."). Moreover, the allegations within the Amended Complaint itself demonstrate that, while the NWA Defendants may have enjoyed discretionary authority over the Contract Plan (an allegation that requires interpretation of the collective bargaining agreement), they did not "exercise" discretionary authority because they did not take action to sell the assets of that Plan – indeed, the essence of Plaintiffs' claims is the *failure* on Defendants' part to sell the Plans' NWA stock. (Am. Compl. ¶¶ 169, 219, 232.) Accordingly, Plaintiffs have not established that the NWA Defendants "exercised" discretionary authority over the Contract Plan. See Olson, 957 F.2d at 625 (individuals exercised discretionary authority over investment account when they traded CDs without permission from the plan participant and provided investment advice to the plan participant).

At bottom, the Court must interpret the Plans and Agreements to determine whether the NWA Defendants owed a fiduciary duty to the Contract Plan. Accordingly, the RLA preempts Plaintiffs' claims, and the Court will dismiss them.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, it is

**ORDERED** that the Pilot Defendants' Motion to Dismiss (Doc. No. 28) and the NWA Defendants' Motion to Dismiss (Doc. 34) are each **GRANTED** and Plaintiffs Neil Hastings and Jennifer Karpiuks' Amended Complaint (Doc. No. 15) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: February 1 , 2007               s/Richard H. Kyle
                                       RICHARD H. KYLE
                                       United States District Judge